

**SO ORDERED.**

**SIGNED this 2nd day of August, 2012.**



_____
Robert E. Nugent
United States Chief Bankruptcy Judge

_____

**PUBLISHED**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE:

| | | |
|---|---|---|
| EARNED INCOME TAX CREDIT | ) | |
| EXEMPTION CONSTITUTIONAL | ) | Jointly Administered |
| CHALLENGE CASES | ) | |
| _____ | ) | |
| IN RE: | ) | |
| | ) | |
| ANTHONY TAYLOR LEA, | ) | Case No. 11-11131 |
| MEREDITH RENEE LEA, | ) | Chapter 7 |
| | ) | **TRUSTEE NAZAR LEAD CASE** |
| Debtors. | ) | |
| _____ | ) | |
| IN RE: | ) | |
| | ) | |
| LAURIE LOUISE HUDSON, | ) | Case No. 11-12855 |
| | ) | Chapter 7 |
| | ) | **TRUSTEE PARKS LEAD CASE** |
| Debtor. | ) | |
| _____ | ) | |
| IN RE: | ) | |
| | ) | |
| RICKY WAYNE FOGLE, | ) | Case No. 11-13302 |
| JERRI LYN FOGLE, | ) | Chapter 7 |

-1-

## MEMORANDUM OPINION

Congress and the Kansas Legislature have each enacted an earned income tax credit (EIC) to afford lower-income families with children not only a refund of over-withheld wages, but also an additional refundable tax credit.[1] Until last year, the right to receive the credit, along with the debtor's income tax refund, was subject to turnover to a chapter 7 debtor's trustee for administration and distribution to the creditors. Recognizing that the proceeds of the credit were intended by Congress and the state legislature to provide some relief for working lower-income families, the Kansas Legislature enacted KAN. STAT. ANN. § 60-2315 (2011 Supp.) which exempts the right to receive the credit for those Kansans who file for bankruptcy relief (the "Act").[2] The debtors in these three cases claimed this exemption and their Trustees objected, claiming that Kansas's bankruptcy specific exemption of the EIC runs afoul of the Bankruptcy Clause and the Supremacy Clause of the United States Constitution. They also assert that the Act's language making it applicable to individual debtors under the Federal Bankruptcy Reform Act of 1978 renders it inapplicable to bankruptcy cases filed after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

Because the Bankruptcy Code expressly accommodates the several states' exemption schemes by allowing states to "opt out" of the federal exemptions in 11 U.S.C. § 522(b) and because this exemption will apply uniformly to all Kansas debtors in bankruptcy, the Act does not violate

---

[1] See 26 U.S.C. § 32; KAN. STAT. ANN. § 79-32,205 (2011 Supp.).

[2] The Act took effect on April 14, 2011. *See* 2011 KAN. SESS. LAWS, ch. 25, sec 2.

either the Bankruptcy or Supremacy Clauses. It plainly applies to the 1978 Bankruptcy Reform Act because that act was amended, not superseded, by BAPCPA. The Trustees' objections must be overruled and that part of these and similarly situated debtors' tax refunds that have been retained in trust pending resolution of these objections should be released to the debtors.[3]

*Jurisdiction*

This Court may hear and determine objections to the validity of a debtor's exemptions as a core proceeding.[4]

*Factual Summary*

In the three captioned cases, the parties submitted stipulations to the Court which are summarized below.[5] Edward J. Nazar is the Trustee of the *Lea* case; Linda S. Parks is the Trustee of the *Hudson* case; and Steven L. Speth is the Trustee of the *Fogle* case. Nazar and Parks submitted briefing on the issues before me; Speth did not. The State of Kansas was allowed to intervene to defend the constitutionality of the EIC exemption statute and submitted briefs in response to the Trustees' submissions.[6] The debtors Lea and Fogle also submitted briefs defending their right to

---

[3] The Court entered a series of case management and procedural orders that aggregated and provided for the joint administration of more than 100 EIC cases like these. The Court intends the reasoning and decree in this Memorandum Opinion to apply in all of those cases.

[4] *See* 28 U.S.C. § 157(b)(1) and (b)(2)(B) and § 1334.

[5] Originally, a fourth lead case administered by chapter 7 trustee J. Michael Morris was part of these jointly administered cases, *In re Arellano*, Case No. 11-11091. The Court approved an agreed order resolving the Trustee's Second Motion for Turnover and Debtor's Amended and Second Amended Exemption, *see* dkt. 80, mooting the EIC exemption issue in that case. Trustee Morris does not participate in these proceedings.

[6] *See* Fed. R. Civ. P. 5.1. *Lea,* Dkt. 69; *Hudson,* Dkt. 24; *Fogle,* Dkt. 38. The State appears by Assistant Attorney General Derenda J. Mitchell.

-3-

claim the exemption.[7]

*Lea*

Anthony and Meredith Lea filed their chapter 7 case on April 25, 2011 and on June 23, amended their Schedule C to claim the EIC exemption. They received a federal and state income tax refund of $7,989 from which their counsel withheld $574 pursuant to an attorney's fee assignment, leaving a net refund amount of $7,415. Part of their federal refund was the EIC which amounted to $2,149. Because April 25 was the 115th day of 2011, 115/365 of the Leas' refund, after deducting the attorneys fee, is property of their bankruptcy estate. If their attempt to exempt the EIC fails, that amount will be $2,336.23; if they prevail, it will be $1,659.15 and they will be permitted to retain the $677.08 that represents 115/365 of the EIC.

*Hudson*

Laurie Hudson filed her chapter 7 case on September 15, 2011 and claimed the EIC exemption. She received a federal income tax refund of $2,744, $2,335 of which represented the EIC. She received a state income tax refund of $297, but was entitled to a state EIC of $420. Her estate owns 258/365 of her federal and state refunds. If the EIC exemption is upheld, the estate's share of the federal refund will be $289.10.[8] Because the state EIC exceeds the amount of her refund, she will be entitled to retain all of it. If, however, the EIC exemption falls, Ms. Hudson's estate will receive 258/365 of $3,041, the sum of the federal and state refunds, or $2,149.52.

*Fogle*

---

[7] Debtors Lea appear by their counsel Martin J. Peck. Debtors Fogle appear by their attorney Douglas D. Depew. Debtor Hudson, represented by Donald Astle, did not submit a brief on the constitutional questions.

[8] ($2,744-$2,335) x 258/365 = $289.10.

Ricky and Jerry Fogle filed their case on October 26, 2011 and exempted their EIC benefit. According to the very brief stipulation filed in that case, they received $6,052 in federal and state refunds including an EIC of $2,957.13. I calculate that the estate's share of their non-exempt tax refund is equal to 299/365 of the total amount. If the EIC exemption survives, the estate will receive $2,535.24;[9] if it doesn't, the estate will get $4,957.66.[10]

The only legal controversy in these cases is whether the Act and the exemption it offers to bankrupt Kansans is a constitutional enactment of the State. There are no other factual controversies in these three matters.

*Constitutionality and Exemption Standards*

The determination of whether a state statute is constitutional is a question of law subject to unlimited review.[11]  State statutes are presumed to be constitutional and courts resolve all doubts in favor of a statute's validity.[12]  Courts are required to interpret a statute in a way that makes it constitutional if a reasonable construction would maintain the legislature's apparent intent.[13]

---

[9] ($6,052- $2,957.13) x 299/365.

[10] $6,052 x 299/365.

[11] *Kansas One-Call Sys., Inc. v. State,* 294 Kan. 220, 225, 274 P.3d 625 (2012).

[12] *Id. See also, Ry. Express Agency, Inc. v. Virginia,* 282 U.S. 440, 444, 51 S.Ct. 201, 75 L.Ed 450 (1931); *Eaton v. Jarvis Products Corp.,* 965 F.2d 922 (10th Cir. 1992)*; Phelps v. Hamilton,* 59 F.3d 1058, 1071 (10th Cir. 1995) (federal courts apply state rules of statutory construction in interpreting state statute, including the rule that the state statute is to be interpreted to uphold its constitutionality whenever possible); *Rural Water Dist. #2 v. City of Louisburg,* 288 Kan. 811, 817, 207 P.3d 1055 (2009), quoting *Martin v. Kansas Dept. Of Revenue,* 285 Kan. 625, 629-30, 176 P.3d 938 (2008).

[13] *Frisby v. Schultz,* 487 U.S. 474, 483, 108 S.Ct. 2495, 101 L.Ed. 2d 420 (1988) (statutes will be interpreted to avoid constitutional difficulties); *Kansas One-Call Sys., Inc., supra; State ex rel. Tomasic v. Unified Government of Wyandotte County/Kansas City, Kan.,* 264 Kan. 293, 300, 955 P. 2d 1136 (1998) (state statutes are not struck down unless infringement of the

Exemption statutes such as the EIC statute at issue here are to be liberally construed in favor of the exemption and to give effect to the statute's beneficent purpose.[14] Exemptions claimed by debtors in bankruptcy are presumed valid.[15] As the parties objecting to the claimed EIC exemption and attacking the constitutionality of the EIC exemption statute, the Trustees have the burden of rebutting the presumption of validity.[16]

*Analysis*

Bankruptcy Judge Janice Miller Karlin has already addressed most of the constitutional challenges to the Kansas EIC exemption that are advanced in these three cases in *In re Westby*.[17] She issued a well-reasoned and articulate decision that handily disposed of many of the objections raised by the Trustees in these cases. And, on a related, but not identical exemption issue, this judge has recently addressed the interplay between the Kansas exemptions and the federal domiciliary requirement set out in § 522(b) in rejecting the chapter 13 trustee's objection to a debtor's use of the

---

constitution is clear beyond substantial doubt.).

[14] *In re Carbaugh,* 278 B.R. 512, 522 (10th Cir. B.A.P. 2002). *See also Schwab v. Reilly,* __ U.S. __, 130 S.Ct. 2652, 2667, 177 L.Ed. 2d 234 (2010) (Bankruptcy exemptions are part and parcel of the fundamental bankruptcy concept of a "fresh start."); *In re Mueller,* 71 B.R. 165, 167 (Bankr. D. Kan. 1987), *aff'd* 867 F.2d 568 (10th Cir. 1989) (To achieve fresh start, bankruptcy laws provide for debtor to exempt property so he will have "the basic necessities of life and a means to achieve economic rehabilitation" and therefore exemption laws are construed liberally in favor of exemption.)

[15] Fed. R. Bankr. P. 4003(c); *Jenkins v. Hodes (In re Hodes),* 402 F.3d 1005, 1009-10 (10th Cir. 2005); *In re Robinson,* 295 B.R. 147, 152 (10th Cir. B.A.P. 2003).

[16] *See Barrett v. Unified School District 259,* 272 Kan. 250, 255, 32 P.3d 1156 (2001) (describing the burden of the party asserting a statute's unconstitutionality as a "weighty one.").

[17] *In re Westby,* __ B.R.__, 2012 WL 1144412 (Bankr. D. Kan. Apr. 4, 2012). None of the trustee objectors in her case raised the § 549 post-petition transfer argument.

federal exemptions that was based on preemption.[18] Both Judge Karlin and I agree that when Congress allowed the states to opt out of the usage of the federal exemptions in § 522(b), it implicitly recognized that different states would place varying limitations on their citizens' rights to exempt property from execution.

### A. The Earned Income Credit

The EIC is a refundable tax credit.[19] As the Tenth Circuit noted in *In re Montgomery*, an individual's tax credits are applied to tax owed for a taxable year and if they exceed the amount of tax owed, they are considered an overpayment that is refunded.[20] So, whether an individual has actually paid in withholdings or not, she is entitled to receive the excess credit as if she had. The EIC "was enacted to reduce the disincentive to work caused by the imposition of Social Security taxes on earned income (welfare payments are not similarly taxed), to stimulate the economy by funneling funds to persons likely to spend the money immediately, and to provide relief for low-income families hurt by rising food and energy prices."[21] As the Tenth Circuit Bankruptcy Appellate Panel has noted, "the EIC benefits low-income married couples and heads of households with qualifying

---

[18] *In re Long,* 470 B.R. 186 (Bankr. D. Kan. May 7, 2012).

[19] *See* 26 U.S.C. § 32; *Sorenson v. Sec'y of Treasury of U.S.,* 475 U.S. 851, 854-55, 106 S.Ct. 1600, 89 L.Ed. 2d 855 (1986) (distinguishing and explaining EIC's refundable feature from certain other tax credits); *In re Dickerson,* 227 B.R. 742, 745 (10th Cir. BAP 1998) (noting EIC treated as an overpayment of tax); *In re Westby,* 2012 WL 1144412 at *1 for Judge Karlin's excellent and concise description of the EIC.

[20] *In re Montgomery*, 224 F.3d 1193, 1194 (10th Cir. 2000).

[21] *Sorenson v. Sec'y of the Treasury*, 475 U.S. at 864. *See In re James,* 406 F.3d 1340 (11th Cir. 2005) (holding that EIC qualified as "public assistance" that could be claimed exempt under Alabama's exemption law for public assistance).

-7-

dependent children."[22] The state's EIC is computed as a percentage of the federal EIC, currently set at 18 per cent.[23]

### B. The Kansas EIC Exemption

KAN. STAT. ANN. § 60-2315 (2011 Supp.) provides:

An individual debtor under the federal bankruptcy reform act of 1978 (11 U.S.C. § 101 et seq.), may exempt *the debtor's right to receive tax credits* allowed pursuant to section 32 of the federal internal revenue code of 1986, as amended, and K.S.A. 79-32,205, and amendments thereto [the Earned Income Credit or EIC]. An exemption pursuant to this section shall not exceed the maximum credit allowed to the debtor under section 32 of the federal internal revenue code of 1986, as amended, for one tax year. Nothing in this section shall be construed to limit the right of offset, attachment or other process with respect to the earned income tax credit for the payment of child support or spousal maintenance.[24]

Thus, a Kansas debtor may exempt the right to receive the EIC portion of his or her tax refunds for one tax year, presumably a year preceding or in which the debtor files his case. A Kansas resident not filing a bankruptcy case may not claim this exemption and that is the seed of the Trustees' discontent. The Trustees believe that "bankruptcy-specific" exemptions improperly invade the province of Congress to establish uniform bankruptcy laws and violate the Supremacy Clause by venturing into an area that congressional action has preempted. They also complain that four different bankruptcy code sections are in direct conflict with the Act and finally argue that because the Act by its terms applies to debtors "under the federal bankruptcy reform act of 1978 (11 U.S.C. § 101 et seq.)," it does not apply to the Bankruptcy Code as amended by the BAPCPA in 2005. None of these arguments prevails.

---

[22] *In re Crowson*, 431 B.R. 484, 492 (10th Cir. BAP 2010).

[23] KAN. STAT. ANN. § 79-32,205 (2011 Supp.).

[24] KAN. STAT. ANN. § 60-2315, emphasis added.

-8-

### C.    The Bankruptcy (Uniformity) Clause

Article I of the United States Constitution reserves to Congress the duty to make uniform laws on the subjects of bankruptcy and naturalization.[25] Until Congress began to enact bankruptcy statutes, the states were free to provide their own insolvency systems, but once Congress exercised this reserved power, the states' separate bankruptcy provisions were swept aside. The Bankruptcy Clause requires Congress to provide federal procedural uniformity, but does not necessarily require that the effect of bankruptcy exemptions will be uniform from state to state so long as those exemptions are uniform *within* a state. The Supreme Court has held that bankruptcy always recognizes differential state law outcomes because it relies heavily on the states' property laws.[26] Indeed, state law exemptions have long been recognized as necessarily and permissibly varying from state to state.[27] The Bankruptcy Code expressly recognizes different states' exemptions by allowing debtors to choose between the federal exemptions in § 522(d) and state law exemptions or

---

[25] U.S. CONST. art. I, § 8, cl. 4.

[26] *Butner v. United States,* 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979) (In bankruptcy, the creation and determination of property rights in assets of a bankrupt's estate are generally determined by state law.). *See also, Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 62 L.Ed. 507 (1918) ("Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the state in certain particulars, although such recognition may lead to different results in different states."); *Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902) (concluding that the Bankruptcy Act of 1898, permitting debtors to choose state law exemptions in force at the time of their bankruptcy petition, did not violate the uniformity requirement under the Bankruptcy Clause; the general operation of the law is uniform although it may result in certain particulars differently in different states).

[27] *Stellwagen,* 245 U.S. at 234: "For example, the Bankruptcy Act recognizes and enforces the laws of the states affecting dower, exemptions, the validity of mortgages, . . . and the like.  Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the Act is not alike in all the states."

permitting states to opt out of the federal law's exemption scheme, forcing their residents to rely solely on their state's exemptions.[28] Thus, exemptions taken by debtors in different states may vary substantially. Kansas has opted out of the federal exemption scheme.[29]

Courts across the country have addressed whether state law bankruptcy-specific exemptions violate the Bankruptcy Clause. Some have held such bankruptcy-specific exemptions unconstitutional.[30] Others have upheld state law bankruptcy-specific exemptions.[31] The leading case finding bankruptcy-specific exemptions to be unconstitutional as a violation of the Bankruptcy Clause is *In re Schafer*, where the Sixth Circuit Bankruptcy Appellate Panel held a Michigan statute that allowed bankruptcy debtors to take a $35,000 homestead exemption instead of the state's $3,500

---

[28] § 522(b)(2).

[29] KAN. STAT. ANN. § 60-2312(a) (2005).

[30] *See In re Schafer,* 455 B.R. 590 (6th Cir. B.A.P. 2011) (Michigan homestead exemption that is more favorable for bankruptcy debtors than nonbankruptcy debtors held unconstitutional under Bankruptcy Clause; uniformity requirement of Bankruptcy Clause mandates geographic uniformity, thus requiring all residents of state, whether in bankruptcy or not, be treated the same); *In re Reynolds,* 24 B.R. 344 (Bankr. S.D. Ohio 1982) (Ohio's bankruptcy-specific exemption statute violated the Bankruptcy Clause); *In re Mata,* 115 B.R. 288 (Bankr. D. Colo. 1990) (Colorado bankruptcy-only exemption violated uniformity requirement).

[31] *See In re Kulp,* 949 F.2d 1106, 1109 n. 3 (10th Cir. 1991) (Colorado's bankruptcy-specific exemption of 75 per cent of IRAs did not violate the Uniformity Clause); *In re Applebaum,* 422 B.R. 684 (9th Cir. B.A.P. 2009) (California's bankruptcy-specific exemptions did not violate the Uniformity Clause); *In re Cross,* 255 B.R. 25 (Bankr. N.D. Ind. 2000) (Indiana's bankruptcy-specific exemption of real property held as tenants by the entireties does not violate the Uniformity Clause; Uniformity Clause is not a restriction upon the states); *In re Shumaker,* 124 B.R. 820 (Bankr. D. Mont. 1991) (Montana's bankruptcy-specific exemption of IRAs for bankruptcy debtors did not violate the doctrine of geographic uniformity). *See also Sheehan v. Peveich,* 574 F.3d 248, 252 (4th Cir. 2009), *cert. denied* 130 S.Ct. 1066 (2010) (noting that Congress did not restrict its authority delegated to the states by requiring state law exemptions apply equally to bankrupt debtors and non-bankruptcy debtors)

-10-

exemption for general debtors to have invaded the province of Congress.[32] Unlike Kansans, Michigan debtors may opt for the federal or state exemptions. Following Sixth Circuit authority holding that when the states adopted the Constitution they ceded the right to legislate in the area of bankruptcy,[33] the *Schafer* court concluded that the states may preclude the use of the federal exemptions as provided by § 522(b)(2), but that the states may not create bankruptcy-only exemptions. It suggested that those states who attempt to do so "conflate" the debtor's right to claim an exemption with the state's right to legislate in an area preserved to the federal government – specifically to legislate concerning bankruptcy.[34] In other words, when a state enacts a bankruptcy-only statute, it is actually making bankruptcy law, invading Congress's bankruptcy power. But by that logic, any opt-out state amending an exemption provision that is carried into bankruptcy by dint of § 522(b)(2) is engaging in the same proscribed conduct. Where do we draw the line?

The *Schafer* court also concluded that Michigan's bankruptcy homestead exemption was geographically non-uniform despite long-standing Supreme Court precedent that allows Congress to "give effect to the allowance of exemptions prescribed by state law without violating the uniformity requirement."[35] As the Supreme Court held in *Hanover Nat'l Bank v. Moyses*, the Constitution requires geographic uniformity rather than personal uniformity. Geographic uniformity

---

[32] 455 B.R. 590, 605-06 (6th Cir. B.A.P. 2011).

[33] *Hood v. Tenn. Student Assist. Corp. (In re Hood)*, 319 F.3d 755 (6th Cir.2003), *aff'd*, 541 U.S. 440, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004).

[34] 455 B.R. at 604.

[35] *Id.* at 605, citing *Ry. Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 469, 102 S.Ct. 1169, 1176, 71 L.Ed.2d 335 (1982) (citing *Hanover Nat'l Bank v. Moyses*, 186 U.S. at 189-90). *See also Stellwagen v. Clum*, 245 U.S. 605, 613 (1918) (holding that a bankruptcy law may be uniform and yet "recognize the laws of the state in certain particulars, although such recognition may lead to different results in different states.").

-11-

is satisfied when "the trustee takes in each state whatever would have been available to the creditor if the bankrupt law had not passed."[36] The *Schafer* court concluded that, in Michigan, a trustee would not "take . . . whatever would have been available" without bankruptcy.

While that passage from *Hanover* may have force in the context of the Michigan statue, we cannot blindly apply it here for several reasons. First, *Hanover* arose as a challenge to the constitutionality of a federal statute, the Bankruptcy Act of 1898. Section 6 of the Bankruptcy Act provided that bankrupts were entitled to the allowance of "exemptions which are prescribed by the state laws in force at the time of the filing of the petition . . . ."[37] The 1898 Act contained no opt-out provision; in the absence of section 6, Act bankrupts would have had no exemptions at all. By contrast, the Bankruptcy Reform Act of 1978 included not only a comprehensive federal exemption scheme, but also a way for states to opt for their own scheme, suggesting that Congress intended to balance debtors' freedom to choose a potentially more liberal federal exemption scheme with deference to the several states' discrete preferences concerning what their resident debtors could keep and what creditors could get.

Second, it is by no means clear that a Kansas creditor of a non-bankrupt debtor would receive any more of the EIC benefit than would a trustee. All that KAN. STAT. ANN. § 60-2315 exempts is the "right to receive tax credits." A creditor of a non-bankrupt Kansas debtor could only attach the proceeds of the EIC in the hands of the debtor once she had received them. That creditor could not, for instance, garnish the funds in the hands of the Internal Revenue Service or the Kansas Department of Revenue because those entities are authorized by statute to only pay refunds to the

---

[36] *Hanover*, 186 U.S. at 190.

[37] 11 U.S.C. § 6 (1898).

-12-

taxpayer, not to creditors.[38] Thus, unlike the Michigan trustee in *Schafer*, these Trustees will receive exactly what a creditor outside bankruptcy in Kansas would receive from the debtor's "right to receive" the EIC: nothing. Geographical uniformity as articulated in *Hanover* is thus served.

Third and perhaps most important, the uniformity requirement is a limitation on congressional power, not that of the states. In *In re Applebaum*, the Ninth Circuit Bankruptcy Appellate Panel concluded that the uniformity provision in the Bankruptcy Clause is not a limitation on the states, but on Congress. "It is an affirmative limitation or restriction upon Congress's power, not a limitation on the states."[39] Thus, when Congress enacts bankruptcy laws, they must be uniform in effect. As noted above, *Hanover* concluded that geographical uniformity was achieved even where the Bankruptcy Act's recognition of different states' exemption schemes might result in different outcomes from state to state. That a state's law results in varying effects on a state's citizens is not enough to invalidate it as long as the law in question does not conflict with Federal law.[40]

None of the circuit courts of appeal has found a bankruptcy-specific exemption to be non-uniform and therefore unconstitutional, but the one circuit court to have considered the issue, the Tenth Circuit, upheld a bankruptcy-specific law.[41] In *In re Kulp*, the Tenth Circuit concluded that

---

[38] *See Brockelman v. Brockelman,* 478 F.Supp. 141 (D. Kan. 1979) (creditor's garnishment of tax refund in hands of IRS was barred by sovereign immunity, citing *Buchanan v. Alexander,* 45 U.S. (4 How.) 20, 11 L.Ed 857 (1846)); 26 U.S.C. § 6402; KAN. STAT. ANN. §§ 75-6204, -6203, -6216 and 79-3233j (2011 Supp.).

[39] 422 B.R. 684 (9th Cir. B.A.P. 2009), quoting *Ry. Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 459 (1982). *See also Cross,* 255 B.R. at 31.

[40] *In re Shumaker,* 124 B.R. 820, 826 (Bankr.D. Mont. 1991).

[41] *In re Kulp,* 949 F.2d at 1109 n. 3 (10th Cir. 1991).

-13-

a Colorado statute that exempted the avails of individual retirement accounts for debtors in bankruptcy was enforceable.[42] In a footnote disposing of the trustee's uniformity argument, that court stated that the trustee's uniformity objection "confuse[d] the geographical uniformity doctrine with the well-established principle that states may pass laws which do not conflict with the federal scheme" and concluded that there was no conflict in this case "because 11 U.S.C. § 522 expressly delegates to states the power to create bankruptcy exemptions."[43] That this expression of the Tenth Circuit's view only appears in a footnote is no reason to discount it as persuasive, if not binding, authority on how to apply the Bankruptcy Clause in these cases.

In short, I agree that *Schafer* is correct to recognize the difference between 522(b)'s permitting a state to opt out and inviting it to draft laws that conflict with federal law, but disagree that this means that a state may never enact a statute that only takes effect in bankruptcy, provided it does not otherwise conflict with the federal scheme. The Tenth Circuit drew this distinction in *Kulp*. The Kansas EIC exemption does not offend the Bankruptcy Clause.

### D. The Supremacy Clause

Article VI of our Constitution provides that the "Laws of the United States" that are made "in Pursuance of the Constitution . . . shall be the supreme Law of the Land" notwithstanding any law enacted by a state.[44] The Trustees claim that the enactment by the Kansas legislature of an exemption that is only effective in a bankruptcy case is pre-empted by the Congress having already enacted a comprehensive bankruptcy scheme in the Code. There are three types of preemption: that

---

[42] 949 F.2d 1106 (10th Cir. 1991).

[43] *Id.* at 1109 n 3.

[44] U.S. CONST. art. VI, cl. 2.

-14-

which is express in federal law; that which is implied from Congress having occupied the field in which the challenged legislation works; and that which results from a state's enactment conflicting with federal law.[45]

### 1. Express Preemption

Nothing in the Bankruptcy Code expressly preempts the enactment of state-specific exemption provisions. In fact, the existence of Bankruptcy Code § 522(b) which operates to allow states to not only enact their own exemptions, but also forces their residents to use them, strongly compels the conclusion against express preemption of statutes like the Act.[46]

### 2. Implied Preemption - Occupying the Field

Nor can we say that Congress has preempted the field of exemptions. Again, Congress's express invitation to the states to mandate the use of their own exemption provisions in bankruptcy makes it hard to conclude that Congress intended to occupy the field in this area. Rather, Congress acted to incorporate state property and exemption law into the bankruptcy process, as the Supreme Court has repeatedly held for over 100 years.

Congress clearly knows how to limit or restrict state law exemptions in bankruptcy cases. As an example, when it enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress imposed restrictions on the value of homestead exemptions in § 522(o) and (p) that specifically apply to debtors claiming state law exemptions.[47]  If their conditions are met,

---

[45] *See Westby,* 2012 WL 1144412 at *11-12 for Judge Karlin's discussion of preemption doctrines.

[46] *See Kulp,* 949 F.2d at 1109 n. 3 (noting that Colorado's bankruptcy-only exemption at issue in *In re Mata,* does not conflict with federal bankruptcy law because § 522 "expressly delegates to states the power to create bankruptcy exemptions.")

[47] *See* § 522(b)(3)(A).

-15-

subsections (o) and (p) cap the amount of the homestead exemption a Kansas bankruptcy debtor may claim; a non-bankrupt Kansas debtor enjoys an unlimited homestead exemption. The 2005 law also imposed domiciliary requirements on debtors seeking to exempt property under state law.[48] The effect of the domicile criteria in § 522(b)(3)(A) is not different from that of the bankruptcy-only EIC exemption. If a Kansas bankruptcy debtor has not resided in the state for the 740 days preceding the petition date he is ineligible to claim the Kansas exemptions, but a non-bankrupt Kansas debtor of shorter duration will qualify for those exemptions as will a Kansas debtor in bankruptcy who has lived in the state his entire life. The operation of the domiciliary requirements thus results in two Kansas bankruptcy debtors being treated differently, based upon the length of time they have resided in the state. It also may result in a Kansas nonbankruptcy debtor being able to claim Kansas exemptions while a Kansas bankruptcy debtor may not. Other than subsections (o) and (p), and the domicile requirements, Congress has not limited state law exemptions.[49] The Kansas EIC exemption does not conflict with these federal restrictions.

    3.    Conflict Preemption - The Act's Alleged Conflicts with the Bankruptcy Code

The Trustees also argue that the state EIC exemption statute actually conflicts with federal law and, in particular, with certain provisions of the Bankruptcy Code. None of these arguments is persuasive. Conflict preemption exists when it is impossible to comply with both the state law

---

[48] *Id.*

[49] *See also Sheehan v. Peveich,* 574 F.3d 248, 252 (4th Cir. 2009), *cert. denied* 130 S. Ct. 1066 (2010) (West Virginia's bankruptcy only exemption scheme did not conflict with federal law where section 522(b)(1) expressly and concurrently authorizes state law exemptions in bankruptcy; Congress did not restrict this authority delegated to the states by requiring state exemptions apply equally to bankruptcy and non-bankruptcy cases).

Case 11-11131    Doc# 102    Filed 08/02/12    Page 16 of 25

and the federal law.[50]  Absent that, the state law must frustrate or present an obstacle, rather than impose a "modest impediment," to the objectives of the federal law.[51]

### a.    Section 541(c)(1)(B) - Property of the Estate

First, the Trustees argue that § 541(c)(1)(B) invalidates the Act. That subsection provides that an interest of the debtor becomes property of the estate at filing notwithstanding any nonbankruptcy law provision that is conditioned on the filing of a case under title 11. The fallacy of this position is that all property that debtors claim exempt is, until the exemption is claimed and allowed, a part of the property of the estate.[52] In the case of EIC property, the "condition" that causes it to leave the estate is the claim and allowance of  the exemption, not the filing of the case. This is no different from any other exemption.  The Act does not conflict with § 541(c)(1)(B) nor frustrate bankruptcy debtors' ability to obtain a fresh start under the Bankruptcy Code.

### b.    Section 549 - Post-petition Transfer

Likewise, the claim of this and any other bankruptcy exemption does not operate as an

---

[50] *PLIVA, Inc. v. Mensing,* __ U.S. __, 131 S. Ct. 2567, 2577, 180 L.Ed. 2d 580 (2011).

[51] *Pharm. Research & Mfrs. Of Am. v.* Walsh, 538 U.S. 644, 667, 123 S.Ct. 1855 (2003) (modest impediment to federal law did not provide a sufficient basis for preemption of state law).

[52] *See* 11 U.S.C. § 522(l); *Schwab v. Reilly,* 560 U.S.__, 130 S. Ct. 2652, 2657, 2663-64 (upon the filing of a chapter 7 petition, most all of the debtor's assets become property of the estate, subject to the debtor's right to reclaim certain property as exempt); *In re Mwangi,* 432 B.R. 812, 820 (9th Cir. B.A.P. 2010) (same); *In re Trudeau,* 237 B.R. 803, 805-06 (10th Cir. B.A.P. 1999) (EIC is property of the estate, citing *In re Montgomery,* 219 B.R. 913, 916 (10th Cir. B.A.P. 1998)); *In re Carbaugh,* 278 B.R. 512, 520 (10th Cir. B.A.P. 2002) (exemptions may only be claimed on property that is property of the bankruptcy estate); *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed. 2d 350 (1991) (property cannot be exempted unless it first falls within the bankruptcy estate); *In re O'Brien*, 443 B.R. 117 (Bankr. W.D. Mich. 2011) (property remains property of the estate, even if it is exemptible, until such time the exemption is actually claimed and the objection deadline expires).

-17-

invalid postpetition transfer under § 549. Under that section, postpetition transfers are avoidable when a debtor transfers property of the estate, after commencement of the case, and the transfer is not authorized by the bankruptcy court or the Bankruptcy Code.[53] The term "transfer" means "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property."[54] The Court first observes that the claiming of an exemption on Schedule C does not constitute a transfer.[55] This is no different than a debtor listing any other property on a bankruptcy schedule. Any alleged "transfer" of the property occurs, if at all, when the claimed exemption is allowed.[56] That has yet to occur in these cases because the trustees have objected to the claim of exemption.[57] Moreover, upon allowance of the exemption, the property transferred is no longer "property of the estate;" it is exempt property.[58] Thus, mere claiming exempt the right to receive the EIC is not a transfer of property of the estate. Even if the

---

[53] Section 549(a). *In re Blair,* 330 B.R. 206, 213 (Bankr. N.D. Ill. 2005); *In re Potter,* 386 B.R. 306, 308 (Bankr. D. Colo. 2008); *In re Patton,* 314 B.R. 826, 833 (Bankr. D. Kan. 2004).

[54] § 101(54)(D).

[55] *In re Duffin,* 457 B.R. 820, 827 (10th Cir. B.A.P. 2011) (debtor's claim of exemptions does not constitute a transfer of property for purposes of strong-arm statute, § 544(a)).

[56] *See In re Mills,* 176 B.R. 924, 927 (D. Kan. 1994) (writing and delivery of check does not constitute postpetition transfer; rather, the transfer occurs when the check is honored); *Wells Fargo Bank, N.A. v. Jimenez,* 406 B.R. 935, 942 (D. N.M. 2008) (property is not summarily removed from bankruptcy estate immediately upon debtor's claim of exemption).

[57] *See In re Bucchino,* 439 B.R. 761, 770 (Bankr. D. N.M. 2010) (property of the estate is not exempt unless and until time to object to claim of exemption expires or a timely objection is overruled).

[58] *Bucchino, supra* (upon allowance of a debtor's claim of exemption, the exempt property revests in the debtor, is excluded from the bankruptcy estate and the trustee may not administer it); *In re Gibson,* 433 B.R. 868, 870 (Bankr. N.D. Okla. 2010) (in order for debtor to remove property from bankruptcy estate by exempting it, property must first be property of the estate.)

-18-

claim of exemption is deemed a post-petition transfer under § 549, only unauthorized transfers fall within the prohibition of this code section. Claiming an exemption is expressly authorized by § 522. Specifically, § 522(b)(1) and (b)(2) authorize an individual debtor to exempt property that is exempt under state law, if the state has opted out of the federal exemption scheme.[59] Because § 522 clearly provides for state law exemptions to be claimed by Kansas debtors, claiming the right to receive the EIC as exempt is authorized and does not violate the condition of § 549(a)(2)(B), that the transfer is unauthorized under title 11. As Judge Karlin observed in *Westby,* under the Trustees' theory, *all* claims of exemption would create a postpetition transfer of property; that proposition is untenable given the express authorization in § 522(b) for Kansas debtors to exempt property under state law.[60]

c.   Section 544(a)(2) – Hypothetical Creditor Rights

Nor does claiming this exemption conflict with the trustee's powers and rights as a hypothetical executing creditor under § 544(a)(2). That Code section states:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by – (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists;

Thus, in bankruptcy, the trustee claims the right to proceed just as a creditor that extended credit to the debtor and who obtained an execution against the debtor that was returned unsatisfied. The Trustees suggest that because a debtor outside of bankruptcy cannot take this exemption, a judgment creditor outside bankruptcy could attach the EIC in the debtor's hands, limiting the powers of a

---

[59] *See also* § 522(b)(3)(A).

[60] *Westby,* 2012 WL 1144412 at *16.

hypothetical Kansas execution creditor. But § 544 grants these hypothetical powers to a trustee "as of the commencement of the case," meaning that the trustee may stand in the shoes of a creditor to claim that creditor's hypothetical priority *in property of the estate*. The exercise of the exemption removes that property from the estate, depriving the trustee of the right to administer it.[61] The same is true for all property claimed exempt in bankruptcy.

The Tenth Circuit Bankruptcy Appellate Panel's decision in *Rupp v. Duffin*, a case discussing the interplay of § 544(a)(2) and a state exemption statute, does not aid the Trustees' cause in this case.[62] That case makes clear that a trustee exercising § 544(a)(2) rights stands in the shoes of a hypothetical executing creditor and can obtain no greater rights than the executing creditor could outside bankruptcy. An executing creditor can only attach non-exempt property.[63] *Duffin* dealt with a Utah exemption statute that was not a bankruptcy-specific exemption. Utah's life insurance exemption statute excepted from its protection payments made on a life insurance contract in the year prior to levy or execution. Because such payments were not exempt, the BAP held that a chapter 7 trustee exercising the powers of a hypothetical creditor could reach these non-exempt payments, just as an executing creditor could.

As already discussed in the analysis of the Trustees' uniformity argument,[64] the EIC exemption statute protects a bankrupt debtor's "right to receive" the tax credits. Outside bankruptcy, an executing creditor could not attach the debtor's EIC in the hands of the IRS or the Kansas

---

[61] *Bucchino,* 439 B.R. at 770.

[62] *Rupp v. Duffin (In re Duffin),* 457 B.R. 820 (10th Cir. B.A.P. 2011).

[63] *Id.* at 829.

[64] *Supra* at pp. 12-13.

Department of Revenue. The result is the same in bankruptcy when the debtor exempts her right to receive the EIC – the trustee exercising the rights of a hypothetical executing creditor also cannot attach the EIC because it is exempt property. There is thus no conflict between the KAN. STAT. ANN. § 60-2315 and § 544(a)(2).

d.  Section 507 - Distribution Priorities

Finally, the trustees argue that this exemption operates to reconfigure the distribution priorities under § 507 because KAN. STAT. ANN. § 60-2315 says that nothing in it "shall be construed to limit the right of offset, attachment, or other process with respect to the earned income tax credit for the payment of child support or spousal maintenance." First, this language merely subjects the debtor's right to receive the EIC to setoff or attachment by governmental entities collecting and enforcing domestic support obligations under existing federal and state law. Second, even if this language somehow charges a trustee with collecting child support from the proceeds of the credit, it does nothing to affect priority of domestic support obligations which already occupy the highest priority, subject only to the trustee's administrative expenses.[65] The Trustees apparently contend that the EIC exemption effectively elevates priority of domestic support obligations over the trustee's administrative expenses in contravention of § 507(a)(1)(C). However, this argument fails to recognize and differentiate between estate property and exempt property. Exempt property is never distributed under § 507 – because it is no longer available for administration by the trustee. Once an exemption of property is allowed, it is no longer property of the estate nor subject to the

---

[65] Section 507(a)(1). A chapter 7 trustee's administrative expenses jump ahead of domestic support obligations "to the extent that the trustee administers assets *that are otherwise available for the payment of such claims.*" § 507(a)(1)(C) [emphasis added].

Case 11-11131 Doc# 102 Filed 08/02/12 Page 21 of 25

trustee's administration.[66] Thus, if a debtor's exemption of the right to receive the EIC is allowed, this property would be unavailable in any event to the trustee for payment of claims, including the trustee's administrative expenses. This last statutory conflict argument must also fail.

e.    Conflict with Federal Tax Policy

Congress established the EIC to allow lower-income families and household heads to retain not only what they have paid in towards income taxes, but also to receive as a "refund" the balance of the credit whether they paid it in withholdings or not. The credit is a means of assisting lower income families in their struggle to subsist. Exemptions serve precisely the same purpose and, as the Kansas legislative history suggests, the legislature exempted this particular benefit in bankruptcy because it knew that debtors who clearly needed the EIC's assistance were losing it in bankruptcy cases. The EIC exemption does not conflict with federal law and congressional intent, it furthers it. As discussed above, only creditors of bankrupt debtors, acting through the instrumentality of the trustees, could reach the debtors' EIC when the debtors received it as part of a pre-petition year's tax refund. Diverting that money from low-income households to pay trustees' fees and unsecured creditors' claims instead of family sustenance directly conflicts with Congress's and the legislature's intent in establishing the earned income credit. KAN. STAT. ANN. § 60-2315 cures that conflict.

In sum, KAN. STAT. ANN. § 60-2315 does not conflict with, interfere with, or frustrate any of the Bankruptcy Code sections relied upon by the Trustees. Nor does it conflict in any way with the enactment and enforcement of any other part of Title 11 or overarching federal law. The EIC

---

[66] *See* note 58, *supra; Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 118 L.Ed. 2d 280 (1992) (by claiming certain property exempt, debtor prevents distribution of such property to his creditors); *Owen v. Owen,* 500 U.S. 305, 308 (1991) ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.").

Case 11-11131    Doc# 102    Filed 08/02/12    Page 22 of 25

exemption neatly dove-tails into the Code's exemption scheme which offers the states the opportunity to choose their debtor's exemptions for them. And, it insures that a bankrupt Kansan's earned income credit goes to pay the rent or buy her family food, not a prepetition creditor's claim. All of this is consistent with the federal law and does not infringe upon the Constitution's Supremacy Clause.

### E.  Application of the Act to post-BAPCPA Bankruptcy Cases

The Trustees assert that the EIC exemption is inapplicable to these cases because they were filed after enactment of BAPCPA and the exemption statute refers to cases filed "under the federal bankruptcy reform act of 1978 (11 U.S.C. § 101 et seq.)."  This argument has been made unsuccessfully in at least one previous exemption case.[67]  In *In re Foth*, I held that--

> The Federal Bankruptcy Reform Act of 1978 became effective on October 1, 1979 and expressly repealed the Bankruptcy Act of 1898, as it had been amended over its 80–year history. Former § 522(b) allowed debtors to elect between the uniform federal scheme of exemptions afforded them by § 522(d) and the exemptions of their state of domicile. Former § 522(b)(1) also provided that a state could opt-out of allowing its residents to elect the federal exemptions and Kansas opted out in 1980 by its passage of § 60–2312. Other than changing the subsection letter and number references in former § 522(b), BAPCPA did not change the opt-out provision in any material way in 2005.

> While BAPCPA significantly modified the provisions of the "federal bankruptcy reform act of 1978," Congress did not repeal the Federal Bankruptcy Reform Act of 1978 as it did the 1898 Act in 1978. The Court notes that the Kansas statute expressly refers to "11 U.S.C. § 101, et seq.," which now embodies [the Federal

---

[67] *See In re Foth,* No. 06-10696, 2007 WL 4563434 (Bankr. D. Kan. Dec. 21, 2007) (in objecting to debtor's claim of exemption in life insurance proceeds under state statute, trustee contended Kansas's "opt-out" from federal bankruptcy exemption scheme under K.S.A. § 60-2312(a) was no longer applicable because the opt out language in § 60-2312(a) referred to individual debtors "under the federal bankruptcy reform act of 1978 (11 U.S.C. § 101 et seq.)," thus making the exemption of life insurance unavailable in cases filed after BAPCPA).

Bankruptcy Reform Act of 1978 *as amended and modified by*] BAPCPA.[68]

In addition, the BAPCPA legislation itself describes BAPCPA as "An Act To amend title 11 of the United States Code . . ."[69] Just as in *Foth*, this objection must also fail. The Kansas EIC exemption statute is applicable and available to debtors in cases filed after the enactment of BAPCPA.

### F.     The Abandoned Equal Protection Objection

In the initial objections to the claimed EIC exemption, Ms. Parks asserted that the exemption statute "denies to trustees in Bankruptcy and creditors of bankrupts the equal protection of the laws, and is in contravention of the Fourteenth Amendment to the Constitution of the United States."[70] However, she did not brief this argument and it is therefore deemed abandoned.[71] None of the other Trustees in these three cases raised an equal protection argument in their objections nor briefed the same in their submissions to the Court. Having failed to raise the issue or address it in their briefs, I consider that the all of the objecting Trustees have waived or abandoned it.

### *Conclusion*

The Trustees have not overcome the presumption of constitutionality that attaches to Kansas's bankruptcy-only EIC exemption statute. As the statute does not contravene either the Uniformity or Supremacy Clauses, the Trustees's objections to the debtors' exemptions of the right

---

[68] *Id.* at *4.

[69] *See* Pub. L. No. 109-8, pt. 1; 119 Stat. 23 (April 20, 2005).

[70] Case No. 11-12855, Dkt. 17, p. 4, ¶ 14.

[71] *Id.,* Dkt. 50. (At page 2 of her brief, the equal protection argument is omitted from the stated grounds for Trustee Parks' objection). *See In re Francis*, 385 B.R. 800 (B.A.P. 10th Cir. 2008)(quoting *Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1266 (10th Cir. 2004)(further quotations omitted)); *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 679 (10th Cir. 1998); *In re Chavez,* 305 B.R. 381 (10th Cir. B.A.P. 2003).

Case 11-11131    Doc# 102    Filed 08/02/12    Page 24 of 25

to receive the earned income credit portions of their income tax refunds are OVERRULED. The Trustees are therefore directed to immediately release any interest they have claimed in any part of these or any similarly-situated debtors' earned income tax credits.

# # #